**EXHIBIT D**
**TO DECLARATION OF JON R. PIERCE IN SUPPORT OF**
**OPPOSITION TO THOUGHT, INC.'S**
**MOTION TO QUASH THIRD PARTY SUBPOENA,**
**OR IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**

**FIRESTAR SOFTWARE INC. v. RED HAT, INC., et al.**
**CASE NO. C 07-80204 MISC MMC (EMC)**



**KILPATRICK
STOCKTON** LLP

Attorneys at Law

August 23, 2007

1001 West Fourth St.
Winston-Salem NC 27101-2400
t 336 607 7300  f 336 607 7500
www.KilpatrickStockton.com

Steven D. Moore
direct dial 336 607 7431
SMoore@KilpatrickStockton.com

**VIA FAX & FIRST CLASS MAIL**

John Jason Gentry Mullins, Esq.
5 Third Street, Suite 815
San Francisco, CA 94103

Re:    **FireStar Software, Inc. v. Red Hat, Inc., et al.** (2:06-CV-00258-TJW)

Dear Mr. Mullins:

We have received and reviewed your previous e-mail correspondence regarding the document subpoena that was recently served on Thought, Inc. We hope this letter will address your concerns sufficiently so that you will withdraw the Motion to Quash that you filed Monday before you received a response to the proposal in your August 15 e-mail. We suggest a meet and confer to discuss any remaining issues if the proposal that we make here is insufficient.

As an initial matter, we disagree with many of the statements in your e-mail of August 15 and in your Motion to Quash filed on August 21. Each of those documents fails to represent accurately the conversation that took place on August 10. We do not see it as particularly productive to set out all the statements with which we disagree, and in the interests of moving forward we will focus on how we might resolve the concerns you have raised regarding the subpoena.

We also disagree that the subpoena is improper in any way. Seeking prior art from third parties is a necessary and proper part of virtually all patent litigations. Even if prior art may on occasion be available through multiple avenues, some prior art is only available from one source or very few sources, particularly when 10+ years have passed since the prior art's publication. This is especially true for prior art related to software patents. An example is the early versions of Thought's CocoBase software program and related documentation that you have indicated resides only on Thought's legacy systems. To our knowledge, this prior art is not available from any other source. You certainly have not suggested that there is an alternative source for these materials; if there is, please let us know.

In the interests of moving forward, Red Hat is willing accept your previous offer to produce (1) versions of CocoBase from the subject time period, along with examples and documentation, and (2) electronic or paper trade flyers or white papers from the subject time period that were published or otherwise distributed outside of Thought, Inc.. After receiving and reviewing this material, we will let you know whether we require any additional information under our subpoena. For the reasons we articulated on our August 10 call,

August 23, 2007
Page 2

however, we cannot agree that this information will satisfy our subpoena before we have received and reviewed it.

Since you have indicated that some of the information Red Hat is seeking is only available on legacy computer systems, we will agree to reimburse (not pay in advance) Thought's reasonable costs actually incurred in retrieving and producing the information. The price you suggest, however, $35,000 in advance, is too high. We will agree to reimburse Thought for the actual number of engineer hours spent retrieving the electronic data at the actual hourly rates the engineers would charge to third parties in the ordinary course of business, provided that Thought provides us in advance with the normal hourly rates for these personnel and that it also submits a written statement identifying the engineers working to retrieve this information as well as an itemization of the hours and days they actually spent doing so. In addition, we will reimburse any costs for storage media and shipping. We estimate that these costs should not exceed $4,000. If Thought begins to incur engineering or other costs that would exceed that amount, we would ask that you let us know that before those costs are incurred so that we may discuss the appropriateness of any additional costs.

Regarding any confidentiality concerns stemming from the fact that there is currently no Protective Order in place in this litigation, we remind you again that Appendix M to the Eastern District of Texas Local Rules contains Patent Rule 2-2. This Rule provides a means for protecting documents that Thought deems confidential so as to limit their distribution to outside attorneys only. Of course, once we have agreed on a protective order with FireStar we will share that with you as well.

In our view, this letter adequately addresses the concerns that you have raised. If you have additional concerns, we suggest that a further meet and confer take place before we are required to file our response to the Motion to Quash.

We would appreciate your prompt response.

Sincerely yours,

Steven D. Moore

cc:    Greg Baker (via email)
       Jon Pierce, Esq. (via email)
       Allen Gardner, Esq. (via email)

**From:** J G Mullins [mailto:jgmullins@sbcglobal.net]
**Sent:** Tuesday, August 28, 2007 6:05 PM
**To:** Moore, Steve
**Cc:** Pierce, Jon; allengardner@potterminton.com; Greg Baker
**Subject:** Letter of August 23, 2007

John Jason Gentry Mullins, CA Bar #236,485
Attorney for Thought, Inc.
797 East Brokaw Road
San Jose, CA 95112
(415) 350-4405
email: jgmullins@sbcglobal.net

Steve Moore, Attorney and Partner, andJon Pierce, AttorneyKilpatrick
Stockton LLP1001 West Fourth Street,
 Winston-Salem,NC 27101-2400Phone:  (336) 607-7503Fax: (336)
734-2638

RE:    Letter From Mr. Moore of August 23, 2007 Regarding Motion to
       Quash Subpoena Filed August 21, 2007 In Northern District of
       California, San Francisco District Court Location, In the Matter of
       Firestar vs. Red Hat case number 2:06-cv-258 (TJW) in U.S. District
       Court, Eastern District of Texas, Marshall Division

Dear Mr. Moore,

My client and I are in receipt of your above
referenced August 23, 2007 letter. Both my client and
I have been occupied with more pressing business
matters. However, we expect to provide you with a
considered response
 to your letter in the next couple of business days.
After you have received our letter of response, we
think it would be prudent to have a telephone
conference to discuss where we go from there.

Regards,
J.G. Mullins


*J G Mullins <jgmullins@sbcglobal.net> wrote:*

Dear, Mr.
 Moore and Mr. Pierce.

A Motion to Quash the above referenced subpoena will be filed tomorrow,
per my client's request.

In addition to the objections raised in the telephone conference on August
10, 2007 and previously served upon you by my client via their by email on
August 15, 2007 and by the follow-up fax sent today,
 below are further specific objections of my client to the document items
requested by the subject subpoena.

1.      Any document dated on
 or before September 25, 1998 concerning U.S. Patent No. 5,857,197.

NO.  Contrary to Rule 45, FRCP (c)(3)(A)(i) and (iv), this request fails to
allow reasonable time for compliance since documents are located only on
legacy systems, and per Rule 45, FRCP (c)(1) would impose an undue
burden and expense upon Thought, Inc. business as stated in more
 detail in prior objections by Thought, Inc. Additionally, and more
importantly, this would require disclosure of a trade secret or confidential
research, development or commercial information and no reasonably need
for such information has been shown or protective order sought by the
requesting party, and the requesting party has not agreed to pay for the
expense of retrieving information for the legacy system or for sorting
proprietary information from non-proprietary information that may or may
 not exist.


Any document dated on or before September 25, 1998 concerning any
        version of CocoBase including without limitation publications, sales
brochures, flyers, catalog sheets, advertisements, mailers, technical papers,
        promotional literature, product specification sheets, and user manuals.

NO.  Contrary to Rule 45, FRCP (c)(3)(A)(i) and (iv), this request fails to
allow reasonable time for compliance since documents are located only on

legacy systems, and per Rule 45, FRCP (c)(1) would impose an undue
burden and expense upon Thought, Inc. business as stated in more detail in
prior objections by Thought, Inc. Additionally, and more importantly, this
would require disclosure of a trade secret or confidential research,
development or commercial information and
no reasonably need for such information has been shown or protective order
sought by the requesting party, and the requesting party has not agreed to
pay for the expense of retrieving information for the legacy system or for
sorting proprietary information from non-proprietary information that may
or may not exist. Any non-proprietary information would be reasonably
available from third party sources or a record is no longer available to
Thought, Inc.


3 .     Any document concerning any product, program, object, or process
        that causes, facilitates, assists, allows, or constitutes any type of
        interaction between an object-oriented software application and a
        database that is dated, existed, or occurred (or may have existed or
        occurred) on or before September 25, 1998.

NO.  Contrary to Rule 45, FRCP (c)(3)(A)(i) and (iv), this request fails to
allow reasonable time for compliance since documents are located only on
legacy systems, and per Rule 45, FRCP (c)(1) would impose an undue
burden and expense upon Thought, Inc. business as stated in more detail in
prior objections
by Thought, Inc. Additionally, and more importantly, this would require
disclosure of a trade secret or confidential research, development or
commercial information and no reasonable need for such information has
been shown or protective order sought by the requesting party, and the
requesting party has not agreed to pay for the expense of retrieving
information for the legacy system or for sorting proprietary information
from non-proprietary information that may or
may not exist.


4.      Any document dated on or before September 25, 1998, concerning
        Ward Mullins and related to any product, program, object, or process
        that causes, facilitates, assists, allows, or
         constitutes any type of interaction between an object-oriented
        software application and a database.

NO.  Contrary
to Rule 45, FRCP (c)(3)(A)(i) and (iv), this request fails to allow reasonable
time for compliance since documents are located only on legacy systems,
and per Rule 45, FRCP (c)(1) would impose an undue burden and expense
upon Thought, Inc. business as stated in more detail in prior objections by
Thought, Inc. Additionally, and more importantly, this would require
disclosure of a trade secret or confidential research, development or
commercial information and no reasonable need for such information has
been
shown or protective order sought by the requesting party, and the requesting
party has not agreed to pay for the expense of retrieving information for the
legacy system or for sorting proprietary information from non-proprietary
information that may or may not exist.


5.      Any document dated on or before September 25, 1998, concerning
            a.  ObjectSpark
            b.  Ontos*Integrator
            c.  Ontos Virtual Information Architecture (VIA)
            d.  ONtos Object Integration Server (OIS)

NO.  Contrary to Rule 45, FRCP (c)(3)(A)(i) and (iv), this request fails to
allow reasonable time for compliance since documents are located only on
legacy systems, and per Rule 45, FRCP (c)(1) would impose an undue
burden and expense upon Thought, Inc. business as stated in more detail in
prior objections by Thought, Inc. Additionally, and more
importantly, this would require disclosure of a trade secret or confidential
research, development or commercial information and no reasonable need
for such information has been shown or protective order sought by the
requesting party, and the requesting party has not agreed to pay for the
expense of retrieving information for the legacy system or for sorting
proprietary information from non-proprietary information that may or
may not exist.

6.      Any document dated on or before September 25, 1998, concerning
            Ontos, Inc. including but not limited to any document concerning
            communications with any of the following:

                {list of 23 people}

NO.  Contrary to Rule 45, FRCP (c)(3)(A)(i) and (iv), this request fails to allow reasonable time for compliance since documents are located only on legacy systems, and per Rule 45, FRCP (c)(1) would impose an undue burden and expense upon Thought, Inc. business as stated in more detail in prior objections by Thought, Inc. Additionally, and more importantly, this would require
disclosure of a trade secret or confidential research, development or commercial information and no reasonable need for such information has been shown or protective order sought by the requesting party, and the requesting party has not agreed to pay for the expense of retrieving information for the legacy system or for sorting proprietary information from non-proprietary information that may or may not exist.


Accordingly, no
documents will be produced and a Motion to Quash wil be filed.

Sincerely,
JG Mullins

**From:** J G Mullins [mailto:jgmullins@sbcglobal.net]
**Sent:** Wednesday, August 29, 2007 8:27 PM
**To:** Moore, Steve
**Cc:** Pierce, Jon; allengardner@potterminton.com; Greg Baker
**Subject:** Initial Detailed Response to RedHat Letter of August 23, 2007

John Jason Gentry Mullins, CA Bar #236,485
Attorney for Thought, Inc.
797 East Brokaw Road
San Jose, CA 95112
(415) 350-4405
email:  jgmullins@sbcglobal.net


Steve Moore, Attorney and Partner, and
Jon Pierce, Attorney
Kilpatrick Stockton LLP1001 West Fourth Street,
Winston-Salem, NC 27101-2400
Phone:  (336) 607-7503
Fax:  (336) 734-2638

RE:    Response to Letter From Mr. Moore of August 23, 2007
Regarding Motion to Quash Subpoena Filed August 21, 2007 In
Northern District of California, San Francisco District Court
Location, In the Matter of Firestar vs. Red Hat case number
2:06-cv-258 (TJW) in U.S. District Court, Eastern District of
Texas, Marshall Division, Now CV07-80204 MMC

Dear Mr. Moore,

Thank your for your letter of August 23, which my client, Though, Inc.
(hereinafter "Thought") and I have now reviewed and are providing below a
considered response. Unless the concerns below are addressed, there is no
point in further considering the other issues raised by your letter.

**RedHat Attorneys'**
**Delay Of More Than Thirteen Days Before Responding To Non-**
**Litigant Thought's Request For An Extension Of Time To**
**Respond To The Third Party Subpoena Requesting Only**
**Information From Legacy Systems, Directly Caused Thought To**
**Undertake The Substantial Time And Expense Of Filing With**

### The Court A Motion To Quash And Protective Order, Therefore RedHat Must Immediately Bear The Full Costs Of Attorneys' Fees And Other Expenses To Date Before Moving Forward

The RedHat attorneys' delay of more than 13 (thirteen) days
in responding to Thought's very reasonable request for an extension of time to respond properly to the above referenced subpoena, or alternatively to withdraw the subpoena without prejudice to RedHat serving another more focused subpoena upon Though at a more reasonable date was inexcusable. On August 10, 2007 (just one day after Thought was first served with the Subpoena), Thought prudently and quickly requested a telephone conference between Thought representatives and the RedHat attorneys to discuss these burdens and difficulties. During this telephone conference, Thought carefully explained to RedHat attorneys that all of the requested information was about 10 years old and would be available, if at all, only from Thought legacy systems. Also, retrieving the information would require at least one senior engineer and the Thought attorneys to separate such information from other proprietary information that was stored and would require a great amount of time and expense.
This would cause unprecedented and extraordinary disruption of Thought's normal business (Thought is a lean, small business enterprise).

Moreover, most of the information in the form sought by RedHat has long been held and protected by Thought as proprietary information, and no protective order exists at this stage of the litigation between Firestar and RedHat. Due to the untimely
nature of the subpoena by RedHat before a protective order and Thought's reasonable concerns about whether such information would add any substantive evidence at all to the information already available to RedHat from Thought U.S. patent number 5,857,197, Thought requested that RedHat withdraw the subpoena without prejudice to submitting another subpoena at a later day (once a protective order was in place), if such information was still found necessary at that time. Such an action by RedHat would have been fully in the spirit of third party discovery rules of the FRCivP for litigants to not unreasonably burden third parties with any unnecessary discovery efforts.

Viewed in a vacuum one may come to the purely irrelevant academic conclusion that there are no "exact" alternative resources for the propriety documents of Thought that are legally available (open source developers

known to RedHat may have illegally downloaded and reverse engineered
Thought software, but their copies would not be legally available). In the
real world Thought's proprietary documents and software releases are not
necessary for RedHat to obtain very reasonable alternative resources to all
such prior art relevant information and concepts that are contained within
such documents. A simple analysis of the Thought patent by a real ORM
expert would provide
 conceptual notes of concepts and features within the patent to an extent that
more narrow implementations of the patented concepts along with their
documentation would be irrelevant. Presumably, the expert would be
available at trial to elucidate to the finder of fact regarding such features well
beyond the limited scope of Thought end user documentation and early
software releases. This is why Thought regards such a request by RedHat to
be duplicative and cumulative over alternative resources available from
within RedHat or from its experts.

For very good reasons and good business practices of Thought, there is
nothing new as prior art to be expected from any Thought proprietary
documents or software releases from the time period in question beyond the
scope of Thought patent that is already in RedHat hands. As explained to
RedHat attorneys in several communications, the Thought documentation,
software releases, and other publications would not be expected to provide
any prior art that would not be duplicative or cumulative with respect to the
referenced Thought patent. As explained to RedHat attorneys, Thought has a
corporate policy and good business practice of patenting all significant novel
software features and methods prior to providing a specific implementation
example and documentation.

Thus, the proprietary documents sought by RedHat would be at best
duplicative or cumulative prior art with respect to the Thought patent that
RedHat has already obtained. Basically, the reasons for this are that they
only relate to specific implementations and documentation of features that
are fully described and understandable from the Thought patent that is
already in the hands of RedHat's attorneys. It is important to note
 that a particular later released software implementation may not be as broad
or fully implemented conceptually as the inventions that are described in the
Thought patent application, and this could be confusing to the finder of facts
when the plain language of the patent application is clear.

The Thought proprietary documentation and explanations of the software features relate to
end user's guides only, and are not a "HOW TO" guide that would be provided to third parties who might want to illegally duplicate Thought software features in a competing product. Moreover the software license specifically forbids such duplication activities. Unless RedHat experts are too inexperienced in the ORM space to understand the plain language of the patent when they conduct their due diligence study of the patent itself, their opinion notes and description of the meanings for terms, elements and concepts in the significant and relevant features of the Thought patent would be expected to be more detailed and conceptually descriptive than any release notes, users guides or concepts that would be evident to the commercial user of CocoBase or ascertainable from clicking on a software gui interface button that does not explain what happens behind the curtain of the software user interface.

As for alternative sources that can explain the contents and concepts present in the Thought patent better than any users' guides or release notes, RedHat has the premier resources for such information. Presumably, RedHat has access to all persons who have been major contributors to the Hibernate project, as well as to other ORM open source software development efforts. A number of such RedHat creators have repeatedly declared on public blogs or bulletin
board forms (for example Gavin King who is purported to be the main contributor to the Hibernate software) that they fully understand all of the features and methods of the Thought patents and the concepts, with respect to what they disclose or implement. A number of such persons reasonably available to RedHat as experts have purported to be intimately familiar with all features of the Thought software known as CocoBase. RedHat has provided no evidence that it has first exhausted its own internal or readily available resources before trying to get such cumulative or duplicative information from Thought in its proprietary form.

Regarding the proprietary nature of the requested Thought documents, RedHat attorneys' never agreed orally or in writing to obtain a proper protective order, never agreed to thoroughly review other evidence and consult their experts to determine if all the broad scope of items requested from Thought would be cumulative or duplicative of information available from other less burdensome resources, and never agreed to pay the full and reasonable costs that would be required for Thought to comply with the

scope of the subpoena, or even to comply with a lesser scope suggested initially by Thought (providing that a Thought specific protective order could be obtained by
RedHat with the permission of Firestar) before this matter escalated into the need for Thought to file a Motion to Quash and for a Protective Order.

On August 15, 2007, Thought detailed its concerns and requests (including a repeat of an extension of time to respond or removal of the subpoena without prejudice to a later, more appropriate subpoena) in an email from Thought's Greg
Baker to RedHat's attorneys. No reply from RedHat attorneys. On August 20, 2007, Thought reiterated its concerns in a fax communication to Red Hat Attorney's and appended a copy of the contents from the August 15, 2007 email. Still no reply from RedHat's attorneys. On the evening of August 20, 2007, after still not receiving a single communication from RedHat's attorneys, the undersigned attorney for Thought sent an email to the RedHat attorneys letting them know that Thought was working on and would be forced to file a Motion to Quash the Subpoena and a Motion for an Adequate Protective Order by close of business on August 21, 2007. Yet again, no reply from RedHat's attorneys.

In spite of the above multiple detailed communications from Thought to RedHat's attorneys, there was simply no reply from the RedHat attorneys, before close of business PST August 21, 2007 on the west coast where Thought's offices are located. The fact that there was a three hour time difference between the RedHat attorneys on the east coast permitted time for RedHat attorneys to contact Thought, Inc. before their close of business on the east coast and permit time for Thought to forego filing any papers with the District Court in San Francisco. The instructions from Thought to its attorneys was to file papers with the Federal District Court on August 21, 2007 at
the latest possible instance), which was 9:00 p.m. EST...to permit RedHat attorneys time to contact Thought and either extend the time for Thought to respond to the subpoena or to simply withdraw it.

Without having received any communications from RedHat's attorneys in 11 (eleven) calendar days from the initial telephone conference on August 10, 2007, and after multiple
communications from Thought without a single reply from RedHat's attorneys, Thought was forced to file the referenced motions with the

Federal District Court in San Francisco after 4:00 p.m. PST and just prior to the 6:00 p.m. filing deadline.

The first response to Thought from RedHat's attorneys to the several written communications and the filed motions was received by fax on August 23, 2007, two full days after the motions were filed. In this communication from RedHat's attorneys, RedHat did not apologize or provide any explanation for their inexcusable delay in responding to the written requests and objections of Thought during the past 13 (thirteen days). Moreover, RedHat still did not agree to pay the full cost of the legacy documents recovery, for the Thought expenses…including attorneys' time and engineer time to review the document in order to comply…and did not mention paying for costs for their inexcusable delay. The paltry amount of $4,000 suggested by RedHat's attorneys would not even cover 10% of the effort. $35,000 is needed for even most efficient efforts that minimize disruptions to Thought's business.

RedHat Attorneys' delay of more than 13 (thirteen) days before responding to non-litigant Thought's request for an extension of time to respond to the third party subpoena requesting only information from Thought's legacy systems was unnecessary and unconscionable. That conduct represents bad manners unbecoming of any officer of the court, and further represents the apparent and obvious poor litigation gamesmanship strategy of forcing non-litigant third parties to: (a) comply with a broad, fishing expedition subpoena to obtain information that RedHat had no immediate legal right to obtain without any protective order being in place, (b) to undertake substantial legal expenses to file a motion to quash and a protective order that RedHat was aware would be necessary to protect the proprietary data of the third party, (c) to simply let the time run out and lose their rights to protect proprietary data, or (d) to undergo the expense of trying to comply with the subpoena document production without any assurance of an adequate protective order to protect proprietary interests or any assurance that RedHat would pay the actual costs undertaken by the non-litigant third party by such document production efforts.

For the above stated reasons, RedHat must immediately bear the full attorney's fees, costs and other Thought expenses to date and promptly pay Thought for such fees, costs and other Thought expenses. Such expenses now exceed well over $10,000 (ten thousand dollars), but in the interest of

compromise and without any documentation of such reasonable costs, Thought will consider $10,000 as payment for such fees, costs and other Thought expenses to date. For example, the entire legal expenses and other Thought costs and expenses necessarily expended in preparing for and filing the motion to quash and the protective order are absolutely and directly the fault of RedHat's attorneys and must be paid immediately.

Thought is not prepared to move forward with any discussions to settle this matter, without such a good faith effort by RedHat first occurring, and after having received an apology for the disruptions to Thoughts business directly caused by the RedHat attorneys' delay in responding to Thought communications regarding the subpoena. Absent the above requested partial payment of Thought expenses to date and an
 apology from RedHat's attorneys, Thought will regard any communications to Thought from RedHat as an empty farce effort that is not offered in good faith, rather than a reasonable offer for a good faith consultation to amicably and reasonably resolve any outstanding issues without unnecessarily burdening a non-litigant third party as required by the FRCivP rules on this topic.


Regards,
J.G. Mullins



1001 West Fourth St.
Winston-Salem NC 27101-2400
t 336 607 7300   f 336 607 7500
www.KilpatrickStockton.com

KILPATRICK
STOCKTON LLP

Attorneys at Law

Steven D. Moore
direct dial 336 607 7431
SMoore@KilpatrickStockton.com

August 30, 2007

**VIA EMAIL**

John Jason Gentry Mullins, Esq.
5 Third Street, Suite 815
San Francisco, CA 94103

Re:    **FireStar Software, Inc. v. Red Hat, Inc., et al.** (2:06-CV-00258-TJW)

Dear Mr. Mullins:

We received your recent email correspondence in response to our letter requesting a meet and confer. Again, we disagree with much of your characterization of the facts, particularly your characterization of the relevant timeline. We continue to believe, however, that it is not helpful to respond point by point, but instead prefer to attempt to resolve the disputes relating to the subpoena we served and the motion you filed in response.

First, we will address your Motion to Quash. As you know, Fed. R. Civ. P. 45 provides a fairly narrow set of circumstances where a Motion to Quash will be granted. Red Hat has attempted to address all of Thought's concerns relevant to these circumstances in its prior letter, and Red Hat has sought a meet and confer to discuss any remaining issues (*i.e.* what constitutes reasonable compensation for Thought's production efforts and anything else Thought may wish to discuss). Thought has refused to hold such a meet and confer unless Red Hat makes a $10,000 advance payment. This is unacceptable.

Thought contends that it was forced to file its motion. However, we did not require that it be filed. We indicated during our telephone conference of August 10 that we were agreeable to an extension of the return date on the subpoena, but Thought apparently chose to file its motion rather than either accept our extension offer or merely serve objections to the subpoena without also filing a motion. Moreover, your lengthy e-mail communication of August 15 gave an unreasonably short deadline to respond to the many issues you raised, and your subsequent fax to my colleague Jon Pierce went only to his electronic fax mailbox (and not to mine) on a day when he was not in the office to receive it. Thus, you filed your motion, which was not necessary in the first place, before we had a reasonable opportunity to respond to the issues you raised.

As we previously expressed, Red Hat has been sued for patent infringement and is defending, in part, based on arguments that the patent-in-suit is invalid. Thought's CocoBase

August 30, 2007
Page 2

product is prior art and, therefore, is relevant to the invalidity issue. Red Hat served Thought with a subpoena seeking documents and other materials related to CocoBase. Thought admits that it has the documents Red Hat is seeking on its proprietary legacy computer systems. Red Hat has (i) agreed to give Thought additional time to produce the documents; (ii) explained the procedure for protecting the confidentiality of such documents under the local rules; and (iii) agreed to reimburse Thought for its reasonable costs related to recovering and producing such documents and other materials. Thus, it appears that the only outstanding issue is whether the parties can agree during a meet and confer on what constitutes reasonable costs.

While we are willing to discuss this issue further with you, as previously expressed, a $35,000 payment is not reasonable. As a further alternative to the payment arrangement we offered in our letter of August 23, we propose that we hire a third-party vendor to recover the files from Thought's systems. This solution would result in minimal impact to your technical personnel -- one IT person would likely need to meet with the vendor for perhaps an hour and then allow access to these systems. Also, since we are dealing with legacy systems, there should be minimum impact to your daily processes. We would bear the costs of hiring the outside vendor to retrieve this information.

The issue of what constitutes reasonable costs, including alternative solutions like the one proposed above, are best raised and discussed during the further meet and confer that we have now twice requested. Please let us know if you are willing to discuss these issues with us before our response to your motion is due on September 12, 2007, so that we may once again try to resolve this unnecessary dispute without Court intervention.

We would appreciate your prompt response.

Sincerely yours,

Steven D. Moore

cc:     Greg Baker (via email)
        Jon Pierce, Esq. (via email)
        Allen Gardner, Esq. (via email)

**Cindi Lee**

| | |
|---|---|
| **From:** | J G Mullins [jgmullins@sbcglobal.net] |
| **Sent:** | Thursday, August 30, 2007 7:32 PM |
| **To:** | Moore, Steve |
| **Cc:** | Pierce, Jon; allengardner@potterminton.com; Greg Baker |
| **Subject:** | Response to August 30, 2007 Letter |

John Jason Gentry Mullins, CA Bar #236,485

Attorney for Thought, Inc.

797 East Brokaw Road

San Jose, CA
 95112

(415) 350-4405

email:  jgmullins@sbcglobal.net

Steve Moore, Attorney and Partnr, and
Jon Pierce, Attorney
Kilpatrick Stockton LLP
1001 West Fourth Street,
Winston-Salem, NC 27101-2400
Phone:  (336) 607-7503
Fax:  (336) 734-2638

Re: August 30, 2007 Letter (2:06-CV-0258-TJW)

We have received your recent email, and we too, do not think it is helpful to respond point by point. Thought would very much prefer to resolve all the issues without Court intervention, if it could believe that RedHat has made a good faith offer to meet and confer, which Thought believes is yet to come. RedHat's attorneys continue to abdicate any responsibility for their failure communicate or to meet and confer during the period from August 10, 2007 to August 21, 2007, and have yet to agree to pay for the damages to Thought proximately caused by their failure to communicate. Thus, Thought.is of the position that it has yet to receive a responsible good faith offer to meet and confer from RedHat's counsel.

Additionally, Thought feels it is responsible and prudent to refute patently false statements and gross mischaracterizations that are replete in the August 30, 2007 letter from RedHat, which Thought does NOT regard as a good faith offer to meet and confer. Thought will minimize repeating below things about which it has repeatedly informed RedHat in past communications.

   <!--[if !supportLists]-->•   Counsel's statement is unfounded and patently false that Thought has said it
      has any items present on its legacy systems that RedHat has requested. Thought has only said: (i)

that such document would be proprietary if they do exist, (ii) trying to locate them would be very expensive and disruptive to Thought's current business efforts, and (iii) their relevant information (if they do exist) would be cumulative or duplicative over your existing sources when fully developed. Thus, any relevant information that might be obtained could be obtained by RedHat by lees burdensome means that do not involve a third party subpoena.<!--[endif]-->

<!--[if !supportLists]-->•   Counsel statement is unfounded and patently false that the Thought letter of August 29, 2007 ever asked for a $10,000 advance as a payment before a meet and confer, instead Thought has made a reasonable a request for reimbursement for justifiable expenses caused directly by RedHat's unreasonable delay in responding to any of Thought's communications for 13 days. In short, Thought only stated that RedHat is responsible to REIMBURSE Thought the $10,000 sum, which represents unnecessary expenditures caused directly by RedHat's failure to meet and confer, or even to respond to ANY of Thought's several communications, during the period from August 10, 2007 to August 21, 2007, when the Motion to Quash was filed. Generally, Thought has merely said that any empty offer by RedHat to meet and confer would be regarded by Thought as a farce, clearly intended as a litigation strategy by RedHat merely as a hollow attempt to try and meet one of the formality requirement of the Federal Rules in the hope of later substantiating a basis for a Motion to Compel rather than a true good faith offer to meet and confer. Therefore, unless Thought's reasonable discounted expenses to date (discounted to $10,000) that were caused directly by RedHat's failure to meet and confer during the period from August 10, 2007 to August 21, 2007 are paid in advance of such an offer to resolve any further outstanding issues, such an offer is considered a formality farce.<!--[endif]-->

<!--[if !supportLists]-->•   Counsel's statement is unfounded and patently false that any RedHat representative EVER agreed to extend the deadline for Thought to reply to the Subpoena beyond the August 21, 2007 due date (which RedHat must know was form its inception an impossibly and unreasonably short period of time strategically imposed by RedHat upon a non-litigant third party with respect to legacy information). Any such offer is something that both Greg Baker and Thought's counsel (myself), would have clearly remembered if it was ever offered by RedHat counsel. There is no way that Thought (as a small company) would have wasted the time and money to the tune of more than $10,000 under urgent deadlines to go through the ridiculous steps necessary to prepare a Motion to Quash in order to preserve Thought's legal rights, if any such offer had EVER been made by RedHat. <!--[endif]-->

<!--[if !supportLists]-->•   Thought is absolutely certain that no RedHat representative EVER made any such unqualified blanket offer to extend the subpoena deadline. ALL of Thought's communications have made it abundantly clear that Thought never received any such offer prior to filing the Motion to Quash. Mr. Moore was driving a car and talking on his cell phone during the only communication between Mr. Moore and Thought during the period from August 9, 2007 when the subpoena was served upon Thought. So, Thought is of the position that the memory of Mr. Moore is likely to be either false or unreliable when contrasted with the notes and memories of Thought that resulted from the full attention available from setting at a desk in Thought's offices. Be that as it may, all of Thought's communications between August 10, 2007 and August 21, 2007, including the Motion to Quash, indicate clearly that Thought was still under the distinct and reasonable impression that it needed more time for responding to the Subpoena beyond the August 21, 2007 and that no such offer had been made by RedHat. Such statements and behavior by Thought could not have been the case if a blanket extension of the period to respond had ever been offered by RedHat's attorneys. Moreover, RedHat had plenty of time to respond to this SINGLE important

point regarding the due date for the Subpoena during the period from August 15, 2007 to August 21, 2007 when the Motion to Quash was filed. Even if Thought were to buy the naked assertion by RedHat's counsel that counsel had insufficient time to consider the August 21, 2007 letter's other details, there is simply no justifiable excuse for RedHat not correcting Thought's clear impression that no offer to extend the period for response had ever been made.. <!--[endif]-->

<!--[if !supportLists]-->•    If an offer from RedHat to extend the period for responding to the Subpoena had EVER existed, of course RedHat would have prudently and quickly let Thought know of its existence by an immediately by fax or email to Thought's counsel. This would let Thought's counse know that the August 21, 2007 deadline had been moved and that a real opportunity to meet to confer to resolve other issues could be scheduled. Instead, Thought only observed total communication silence from RedHat (no faxes, no phone calls, and no emails) for 13 days. Such silence, in view of Thought's repeated statements on the deadline issue, regarding the fact that the time for response was unreasonably short, is strong circumstantial evidence that no such offer for an extension of time was ever proffered by RedHat's counsel any current statements not withstanding. <!--[endif]-->

<!--[if !supportLists]-->•    RedHat's attorneys have made the flimsy assertion that they did not have time for a detailed response to the August 15, 2007 letter during the 6 days between the Thought August 15, 2007 letter and when the Motion to Quash was filed (six days should have been more than sufficient time to prepare a response to the letter particularly in view of the ability of RedHat's attorneys to  provide a quick turn in response to Thought's communications once a Motion to Quash was filed). How can such statements be regarded by Thought as anything but a phony assertion by RedHat, when experienced litigators such as RedHat's attorneys are used to providing extremely quick responses when THEY are served a subpoena. RedHat knew that the Subpoena only gave Thought eleven calendar days to respond to a broad, burdensome subpoena request. They could have prepared at least some communication during the referenced six day period as a courtesy to Thought's counsel and with good attorney manners, if nothing more. Thought's Counsel is of the very reasonable position, based upon facts and belief, that RedHat's attorneys did have time to do some response (if simply to say that they needed more time to consider the Thought August 15, 2007 letter). The circumstantial evidence overwhelming points to the fact that RedHat's attorneys did not respond to Thought's multiple communications simply for the strategic and reprehensible reasons pointed out in the Thought August 29, 2007 letter. <!--[endif]-->

<!--[if !supportLists]-->•    RedHat's statement on page 2 of the August 30, 2007 letter gives a patently false impression. RedHat first offered to give an extension of time to respond to the Subpoena two full days AFTER the period to respond had lapsed and Thought had already been forced to file a Motion to Quash (at great expense and under duress of very tight timelines) to preserve its legal rights. If RedHat's attorneys EVER made any written offer to extend the time for Thought to respond to the Subpoena prior to August 23, 2007, Redhat's counsel is invited to share that document with Thought's counsel or to otherwise cease to assert that any such offer was ever made by RedHat prior to August 23, 2007.<!--[endif]-->

<!--[if !supportLists]-->•    There is not proof an adequate protection of Thought's proprietary information, if it could be found and produced. RedHat's counsel has never provided Thought's counsel with a copy of any local Texas rules (only first referred to in the August 23, 2007 RedHat letter) for Thought's counsel to consider if such rules would provide adequate protection for Thought's proprietary information (if such proprietary information even exists). In particular,

RedHat's counsel has not stated whether they have ever reviewed such local rules to see if they would meet the scope of protection as set forth by Thought in the August 15, 2007 letter. Moreover, RedHat's counsel has never stated whether they have conferred with their client to see if their client would agree with the scope of protection requested by Thought in the August 15, 2007 (where Greg Baker of Thought clearly asked RedHat counsel to let Thought know if RedHat would be wiling to agree to a scope of protection requested by Thought for proprietary information).<!--[endif]-->

<!--[if !supportLists]-->•    RedHat's counsel has never stated that they have conferred with their client and expert witnesses and reviewed other sources available to RedHat to verify if the information sought from Thought is already reasonably available to RedHat from alternative sources as repeatedly suggested by Thought. Thought's counsel has informed RedHat's counsel multiple times that the CocoBase software releases during the time in question were fully circumscribed by the Thought US patent as mere implementations of features that are well described in the patent itself. Thus, the requested information (if it exists at all) would be a mere duplication of information already available to any ORM expert from reviewing the patent document itself. Therefore, there is no justification for RedHat's counsel to continue asking for burdensome legacy system searches for legacy information that may not exist in order to obtain such duplicative and cumulative information, along with proprietary Thought information that is not at all relevant to the current litigation. While RedHat's counsel may regard the CocoBase software as prior art against their opponent, the Thought patent covering such software is already available and duplicates the software's concepts and information. As such , searching for legacy copies of such software (if they exist) would be a duplicative and cumulative waste of time.<!--[endif]-->

<!--[if !supportLists]-->•    Contrary to patently false statements by RedHat's counsel as pointed out above, the documents and files requested in the Subpoena may not even exist on Thought's legacy systems and Thought has NEVER said that they do exist. Thought will not know the answer to that question until they have a thorough look, it will be expensive for Thought to look, and no necessity to look has ever been justified or substantiated by RedHat. The looking process will require the precise knowledge, experience and expertise of at least one senior Thought engineer in combination with proper attorney review to assure whether any items can be produced (if they exist at all)<!--[endif]-->

• RedHat's attorneys have falsely, and without justification, stated that Thought has said it has present on its legacy systems the proprietary documents that are now requested. This is totally unjustified and therefore false. RedHat has not even offered to pay the reasonable costs for Thought to start looking for them, to verify if they even exist on Thought's legacy systems. In the telephone conference of August 10, 2007, in our letter of August 15, 2007, in the letters that follow and in the motion to quash, Thought has clearly and repeatedly stated that any such documents exist (if at all) on legacy systems and Thought experts would need to separate them from other archived documents that are not relevant to the subpoena with extensive engineering and attorney review, if they do exist. That is the main reason that Thought has continually urged RedHat to first exhaust other RedHat resources.

• Contrary to RedHat's attorney suggestions (which are not based upon any first hand knowledge that could provide even a rudimentary factual basis for such suggestions to have any merit) Thought's cost estimates are low-ball estimates based upon real knowledge. Unlike your cost estimates, the Thought estimates are based upon our first hand knowledge of Thought legacy systems, about which you have no knowledge or any reason to think you have any knowledge. In our view, the third party

vendor suggestion that you have made would not be helpful…since the retrieval process would not be anywhere as simple as you stubbornly continue to suggest without any factual basis for such a suggestion.

- Thought engineers that are familiar with our legacy systems and with our legacy products will absolutely need to look at legacy files that may be widely scattered within the legacy system if there is any hope of providing you with the documents and software releases requested. No installer program existed in the early Thought years and thus any requested items (if they exist at all) are not located in neat little packages detectable to an ignorant third party computer tech. The files you requested may not be available at all, and will require a senior Thought engineer who is familiar with legacy Thought software and systems and the company history to reassemble files (if they exist at all) for documents and software releases according to their file dates, To repeat yet again, the items you have requested would not be located (if at all) in one little neat package that a cheap third party vendor who is ignorant of Thought legacy systems might easily retrieve. Moreover,Thought is not going to produce a blanket opportunity for you (as the attorney for a competitor) to review sensitive, proprietary documents that are not relevant to this litigation. This would be particularly egregious, when the documents that you seek may not even exist no matter the extent of your review if we did a blanket production. Because of the sensitive nature of providing proprietary materials and separating them from irrelevant documents that may also be sensitive and proprietary, any files found or reconstructed will require both an attorney and engineer review before they could be released to you in order to assure that they accurately reflect the items requested. This process will be just as expensive as we have previously quoted, and could be far more expensive than we have quoted, depending upon the difficulties that may be found by Thought engineers, should they attempt to produce any of the requested items.

- Additionally, as we have stated time and again, Thought would expect the relevant information from any such production (if it exists at all) to be duplicative and cumulative over sources already available to RedHat, or already in their procession, with respect to such information. Therefore, even asking for our proprietary items once you have this understanding as a result of communications from Thought is not justified under the Federal rules, and is harassing of Thought and its business interests.

- RedHat's attorneys clearly know that RedHat must both need the information and not be able to reasonable obtain essentially the same information from a less burdensome source, if the information (if it is available at all) is only available form legacy systems and would be proprietary. RedHat's attorneys have never addressed this point under the rules and have repeatedly (like a annoying broken record) stated something to the effect that RedHat wants the documents because they are prior art, without ever providing Thought with any justification regarding why RedHat can't first try to get the information elsewhere instead of burdening Thought with an arduous and perhaps ultimately unsuccessful effort to look for the items requested.

Best regards,
J.G. Mullins
Attorney For Thought, Inc.

9/12/2007


KILPATRICK
STOCKTON LLP

Attorneys at Law

1001 West Fourth St.
Winston-Salem NC 27101-2400
t 336 607 7300  f 336 607 7500
www.KilpatrickStockton.com

Steven D. Moore
direct dial 336 607 7431
SMoore@KilpatrickStockton.com

September 4, 2007

**VIA EMAIL & FIRST CLASS MAIL**

John Jason Gentry Mullins, Esq.
5 Third Street, Suite 815
San Francisco, CA 94103

Re:    **FireStar Software, Inc. v. Red Hat, Inc., et al. (2:06-CV-00258-TJW)**

Dear Mr. Mullins:

Please consider this Red Hat's third and final attempt to meet and confer prior to the October 3 hearing. We believe that there is only one issue remaining -- how much it would cost to recover and produce the documents we are seeking through our subpoena -- and that a telephone conference would help to resolve that issue. As a final plea to get Thought to the table on this issue, we ask that you make a Thought engineer available during a meet and confer to discuss in detail Thought's legacy systems and the specific documentation that we are seeking. We will have a third-party computer forensics expert available to discuss these issues with Thought's engineer. This should remove much or all of the speculation regarding what it would reasonably cost to produce the documents we are seeking. If you wish to confer with us to discuss this issue, we remain available to do so.

Sincerely yours,

Steven D. Moore

cc:    Greg Baker (via email)
       Jon Pierce, Esq. (via email)
       Allen Gardner, Esq. (via email)

US2000 10279674.1