JOHN JASON GENTRY MULLINS (State Bar No. 236,485)
5 Third Street, Suite 815
San Francisco, CA 94103
Tel: (415) 350-4405
Fax: (415) 358-8581

Attorney for:
Thought, Inc. – Third Party Non-Litigant

## UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

#### SAN FRANCISCO DIVISION

| | |
|---|---|
| FIRESTAR SOFTWARE, INC | ) ) ) ) **STIPULATION REQUEST TO FACTS AND INFO RE THOUGHT INC.'S MOTION TO QUASH THIRD PARTY SUBPOENA, OR IN THE ALTERNATIVE FOR A PROTECTIVE ORDER;** |
| Plaintiff, | ) **[PROPOSED ORDER]** |
| v. | ) ) |
| | ) **[CASE NO. C 07-80204 MISC MMC (EMC)** |
| RED HAT, INC. | ) ) |
| Defendant. | ) ) ) |

## <u>REQUEST FOR STIPULATION TO FACTS AND INFORMTION FROM REDHAT ATTORNEYS AS UNAVAILABLE WITNESSES WITH REVISED MOTION TO QUASH AND PROTECTIVE ORDER</u>

Here comes Thought with this request for a stipulation of facts and information in order to more efficiently conduct a requested recorded telephonic meet and confer on October 1, 2007 between Thought , Inc and RedHat attorneys with the goal of trying to

come to a reasonable settlement of all outstanding issues, and thus avoid the need for a

hearing before the Court. In addition, Thought has provided herewith an amended

proposed Motion to Quash and Protective Order that requests that RedHat pay any and all

reasonable attorneys fees and expenses required for Thought to file and prosecute this

Motion to Quash and request for a Protective Order with follow-on communications.

      Thought presumes that RedHat North Carolina attorneys Jon Pierce and Steve

Moore are unlikely to be available in California as witnesses on the date of the hearing of

the Thought Motion to Quash, since they have relegated their representation to a local

California attorney by the name of D. Peter Harvey. Thus, at the time of the hearing,

unless they stipulate to certain facts and information in writing, they will have managed

to dodge directly answering Thought's questions and concerns and would have failed to

directly answered certain critical questions and ascertain certain important facts of

extreme relevance to the Thought position that filing the Motion to Quash was a direct

and proximate result of the RedHat attorneys' (a) failure to respond to any of Thought's

email or fax communications during the period from August 10, 2007 through the filing

of the Motion to Quash on August 21, 2007, (b) failure to set up any meet and confer

communications to resolve the issues raised in the several communications from Thought

prior to August 21, 2007, and (c) failing to extend the LEGAL deadline for responding to

the Subpoena August 21, 2007 to permit adequate time to confer and attempt to come to

an agreement between the parties regarding the Thought issues and concerns respecting

the Subpoena.

      Thus, by October 1, 2007, Thought respectfully requests that RedHat attorneys

stipulate to certain facts and information regarding prior communications between the

1   parties and upon several certain significant points that will need to be discussed in such a

2   meet and confer or that will be issues to be addressed at the hearing. Upon the completion

3

4   of such stipulations, Thought.requests conducting a recorded telephonic meet and confer

5   to attempt to settle all outstanding issues between the parties.

6           Initially, Thought wants to make clear that it is still confused by RedHat prior

7   statements in letters after August 23, 2007 and in the affidavit filed in response to the

8   Motion to Quash, which state that RedHat had offered Thought an extension of time for

9
    responding to the subpoena during the August 10, 2007 telephone conference. RedHat
10
11  went on to assert in the Pierce Affidavit filed as Exhibit A with the RedHat Response to

12  the Motion to Quash that RedHat has granted several such extensions to other third party

13  subpoena recipients. These statements are very confusing to Thought, because there

14  exists multiple interpretations of such language having at least two very important factual

15  situations that are not distinguished by the phrase **"extension of the period for response**

16  **to the subpoena"** as utilized by RedHat. Thought is unable to determine what RedHat is

17
    attesting to having said or offered, because multiple meanings must be distinguished for
18
19  any reasonable understanding to occur between the parties, and for the understanding of

20  the court that might consider the Motion to Quash if the meet and confer does not result

21  in a settlement.

22           a.   One interpretation of the phrase **"extension of the period for**

23              **response to the subpoena"** is the factual situation where a party might be

24              offering or agreeing to extend ONLY the period for production under a subpoena
25
26              (providing that a subpoena recipient would be willing to acquiesce to the scope of

27              the subpoena as issued, not agree in advance to the cost of production under the

28

DECLARATION OF GREG BAKER IN SUPPORT OF THOUGHT'S      CASE NO. C 07-080204 MISC MMC (EMC)
MOTION TO QUASH OR FOR A PROTECTIVE ORDER

3

Case C 07-MC 80204 –MMC                                         Page 4 of 4

1
2
3
4
subpoena and simply relinquish the right to file a Motion to Quash regarding any

rights to not produce any proprietary subject matter without an adequate

protective order being in place).

5
6
7
8
9
10
11
12
13
    b.  A totally different interpretation of the phrase **"extension of the**

**period for response to the subpoena"** is the factual situation where a party

might be offering or agreeing to extend the **LEGAL** deadline for responding to

the subpoena such that all legal rights of the subpoena recipient (including the

right to file a Motion to Quash) are extended for a period of time beyond the

initial period stated in the issued subpoena in order for the parties to discuss

settlement of the issues without prejudice to the rights of the subpoena

14
15
16
17
18
19
20
21
22
    Some confusion between the parties may have been occurring, because Thought

has always and clearly meant the second phrase interpretation (2), as stated above, while

it is possible that RedHat may have only been referring to the first interpretation meaning

as stated in (1), above. Essentially, Thought has always maintained that filing the Motion

to Quash was necessary to preserve Thought's legal rights, because RedHat had never

agreed to extend the legal deadline for the subpoena beyond its legal deadline date of

August 21, 2007. Therefore, clarifying this point is a critical issue for an efficient

settlement discussion or for the hearing.

23
24
25
26
27
    Thereofore, for the purposes of answering the stipulations or factual inquires set

forth below, the definition for the phrase "extend the legal deadline for responding to the

subpoena" shall mean that ALL remedies of the subpoena recipient are extended, not

just that the period for one or more actions by recipient such as document production are

28

extended. Accordingly, Thought hereby asks RedHat to clarify the factual record by

answering the following stipulations and production of facts. RedHat should answer all

stipulation questions with a "Yes" or "No" when those are the choices. If information and

details other than a Yes or No are sought, such should be answered as completely as is

possible. Failure to answer one question will not excuse answering the other questions.

Should RedHat refuse to answer a Yes or No question or provide stipulations,

then Thought requests a continuance to permit RedHat attorneys to travel to California

and be available as witnesses to address the factual issues. Alternatively, if no

continuance is granted, Thought asks the court to assume the presumption that a failure to

answer one of the item stipulations be considered as an answer that would be most

favorable to Thought's positions in support of the Motion to Quash.

## **Requested Stipulations and Production of Facts**

1.    Prior to August 21, 2007, RedHat offered or agreed to extend for Thought

the legal deadline for responding to the Subpoena beyond the August 21, 2007 date that

was stated in the Subpoena as issued.     Yes _____   No _____

2.    If the answer to (A) is "Yes", does any RedHat attorney have any

contemporaneous memorandum to the file regarding the August 10, 2007 as adequate and

clear proof that would to support such an unusual action as extending the Subpoena

response date for all legal remedies beyond the August 21, 2007 due date.  Yes _____

No _____

3.    If the answer to (B) is "Yes", please attach a true copy of such proof to the

response to this communication.

Case C 07-MC 80204 –MMC                                      Page 6 of 6

4.    Did any RedHat attorney receive the four Thought communications to
RedHat dated August 15, 2007, August 17, 2007, and two on August 20, 2007 prior to
August 21, 2007, wherein Thought stated clearly by and through its representatives that
Thought would be forced to file a Motion to Quash on August 21, 2007 because the legal
deadline to respond to the Subpoena was due to expire on August 21, 2007.

Yes _____ No _____

5.    If the answer to (A) was "Yes" and RedHat was truly ready, willing and able
to extend the legal deadline to responding to the subpoena (and was too busy to provide a
detailed response to the Thought communications prior to August 21, 2007 as one
communication has stated), please provide an explanation as to why did RedHat not
simply find the very short amount of time necessary to communicate their lack of time to
respond to Thought and extend the legal deadline for responding in writing by simply
sending Thought a short 3 or 4 line communication by email or fax with a further offer to
meet and confer in order to avoid the imminent necessity for Thought to file a Motion to
Quash prior to the August 21, 2007 expiration of the legal deadline.

6.    Prior to August 21, 2007 had RedHat ever agreed in writing to pay the
actual costs that Thought would incur to produce the items and information requested at
the hourly rates quoted by Thought?    Yes _____ No _____

As of today's date? Yes _____ No _____

7.    Prior to August 21, 2007 had RedHat ever agreed in writing to definitively
limit the scope of use for Thought proprietary information to the extent that was
requested by Thought during the August 10, 2007 telephone conference and in
communications thereafter? Yes ___ No ___ As of today's date? Yes ___ No ___

Case C 07-MC 80204 –MMC

9.    To date, has RedHat ever provided Thought with any factually substantiated answer to refute Thought assertion that production of any of Thought proprietary information is unjustified because any information obtained from Thought proprietary software implementations of patented concepts and implementation end user documentation (if they could be produced from legacy systems) would be reasonably expected to only be duplicative and cumulative over information that an ORM expert would reasonably obtain from a thorough analysis of the Thought patent that is already in RedHat's possession?  Yes _____  No _____

10.    If the answer to (H) is "Yes" please provide such a factual basis, including (i) an affidavit from an ORM expert and (ii) an affidavit from a legal patent expert stating why the assertion by Thought of such information being only duplicative and cumulative is unfounded, because Thought has attested that it has first hand knowledge under its standard business practices that all implementations would only involve concepts thoroughly described in the patent itself and that are within the descriptive scope of the Thought patent.

11.    Please explain factually why Thought's proprietary documents would be expected to provide information not available from other reasonable means such that RedHat should not withdraw its requests for these proprietary legacy documents (should they exist), in view of Thought's statements that all software implementations during the period set forth in the subpoena are conceptually described by the Thought patent that is already in RedHat's hands, and with a view to the fact that the validity of the Thought patent is not at issue in this case, such that copies of any proprietary implementations

DECLARATION OF GREG BAKER IN SUPPORT OF THOUGHT'S     CASE NO. C 07-080204 MISC MMC (EMC)
MOTION TO QUASH OR FOR A PROTECTIVE ORDER

7

1    would be irrelevant duplicative prior art if they are only cumulative and duplicative over

2    the patent itself, which RedHat already has?

3          12.    Please explain why RedHat continues to assert that it would be less

4

5    expensive with respect to Thought's time and less disruptive to Thought's business to use

6    a RedHat designated third party computer person to retrieve legacy software and

7    documents, to extract only the relevant items (should they exist) from among many

8    irrelevant but sensitive proprietary items, and to reconstruct any software releases in an

9    organized manner that may be scattered on legacy systems, when (i) Thought experts

10   would be reasonably expected to be the most knowledgeable about their own historical

11

12   file system and products and thus the most efficient persons to do retrieval, sorting and

13   compiling, (ii) in view of the fact that the December 8, 1999 PG&E power shortage fried

14   the Thought legacy server hard drive system, which was then not fully reconstructed with

15   respect to legacy documents, (iii) in view of the fact that the Thought inhouse proprietary

16   download server for software implementations and documentations was hacked and virus

17   infested shortly thereafter and needed to be wiped clean to remove the viruses, and (iv) in

18   view of the fact that neat software package installers were not used during the subpoena

19   time period and zip files for releases may not exist such that a knowledgeable Thought

20   engineer may be required to group together individual files into release packages

21

22   according to their content and date based on knowledge and expertise available only from

23   a Thought engineer in order to reconstruct software implementation releases and their

24   documentation even if individual files COULD be retrieved from the legacy system?

25

26

27

28

Case C 07-MC 80204 –MMC                                    Page 9 of 9

*Though will need an answer from RedHat to the above requests for stipulation and request for information Items 1-12 by Monday October 1, 2007 in order to schedule and have a recorded telephonic meet and confer with RedHat attorneys on October 1, 2007.*

Should RedHat refuse to expedite matters and therefore narrow the issues for discussion and scheduled hearing for the Motion to Quash by stipulating yes or no to any question set forth above or fail to provide the requested information and proof, Thought may be forced to ask the Judge for an continuance to provide an extension of time and rescheduling of the hearing for the Motion to Quash along with an order requiring RedHat to answer such stipulations and requests for information prior to any hearing.

Alternatively, if a continuance and rescheduling of the hearing on the Motion to Quash is not granted, Thought may ask the Judge to presume a stipulation response or information production answer from RedHat that is most favorable to Thought's position in the Motion to Quash and for a Protective Order.

Thought looks forward to receiving an answer from RedHat on this matter. Appended are two affidavits regarding factual matters and opinions, one from Ward Mullins (Exhibit 1) and one from Greg Baker (Exhibit 2).

DATED: September 28, 2007          Thought, Inc.

John Jason Gentry Mullins

Attorney to Non-Party Thought Inc.

DECLARATION OF GREG BAKER IN SUPPORT OF THOUGHT'S          CASE NO. C 07-080204 MISC MMC (EMC)
MOTION TO QUASH OR FOR A PROTECTIVE ORDER

9

1
2
3
4
5
6
7
8                  **UNITED STATES DISTRICT COURT**

9              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10                      **SAN FRANCISCO DIVISION**

11

12                                          )
13   FIRESTAR  SOFTWARE, INC                 )
                                            )
14            Plaintiff,                     )    **[PROPOSED ORDER - REVISED]**
                                            )
15                                          )
16            v.                            )
                                            )
17                                          )    **[CASE NO. C 07-80204 MISC (EMC)**
                                            )
18   RED HAT, INC.                          )
                                            )
19            Defendant.                    )
20                                          )
                                            )
21                                          )

22
23       For good cause shown, IT IS HEREBY ORDERED that nonparty Thought, Inc.'s

24   Motion to Quash Subpoena is GRANTED.

25
26
27
28

1

2

3       For good cause shown, IT IS HEREBY FURTHER ORDERED the nonparty

4   Thought, Inc.'s Motion for a Protective Order ordering Red Hat to refrain from any

5   further Subpoenas or Depositions of Thought, Inc. is Granted.

6

7       For good cause shown, IT IS HEREBY FURTHER ORDERED the nonparty

8   Thought, Inc.'s Motion for an award of attorney's fees and other reasonable fees related

9   to filing and prosecuting this Motion to Quash and Protective Order and ordering Red Hat

10  to pay Thoughts reasonable fees and other fees within thirty (30) days of receipt of an

11  invoice from Thought summarizing such expenses is Granted.

12

13      For good cause shown, IT IS HEREBY FURTHER ORDERED the nonparty

14  Thought, Inc.'s motion to require Red Hat to make a proper showing with this Court to

15  show just cause why this Protective Order should be modified prior to any further

16

17  Subpoenas or Deposition of Thought, Inc. is Granted.

18      For good cause shown, IT IS HEREBY FURTHER ORDERED the nonparty

19  Thought, Inc.'s motion to require Red Hat to meet the following criteria to meet its

20  burden to have this Protective Order modified, (i) Red Hat must make an adequate

21  advance showing of the clear necessity for information of limited reasonable scope from

22  Thought, Inc. (ii) that it is unavailable from other sources, (iii) must agree to conduct

23  discovery in the least burdensome way possible to avoid the disruption of Thought, Inc.'s

24  business, (iv) must agree upon a cost range in advance of any production efforts by

25  Thought, Inc., and (v) must show that an adequate protective order of limited information

26

27

28

1   use is in place to protect Thought Inc.'s business interests and property interests in the

2   Thought, Inc. proprietary information.

3

4

5

6   _____

7                          Judge, United States District Court

8                          San Francisco, Division

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Exh. E-4 1*

1  JOHN JASON GENTRY MULLINS (State Bar No. 236,485)
2  5 Third Street, Suite 815
   San Francisco, CA 94103
3  Tel: (415) 350-4405
   Fax: (415) 358-8581
4
   Attorney for:
5  Thought, Inc. – Third Party Non-Litigant

6
              UNITED STATES DISTRICT COURT
7
         FOR THE NORTHERN DISTRICT OF CALIFORNIA
8
              SAN FRANCISCO DIVISION
9

10

11                              )    **DECLARATION OF WARD MULLINS IN SUPPORT**
    FIRESTAR                     )    **OF THOUGHT INC.'S MOTION TO QUASH THIRD**
12  SOFTWARE, INC               )    **PARTY SUBPOENA, OR IN THE ALTERNATIVE**
                                 )    **FOR A PROTECTIVE ORDER;**
13                              )    **[PROPOSED ORDER]**
          Plaintiff,            )
14                              )
15        v.                     )
                                 )
16                              )    **[CASE NO. C 07-80204 MISC MMC (EMC)**
    RED HAT, INC.               )
17                              )
18        Defendant.            )
                                 )
19                              )
                                 )
20

21
              **NOTICE OF MOTION; MOTION**
22
23  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

24  I, Ward R. Mullins declare as follows:

25         1.    I am the current CEO of Thought, Inc. and have personal knowledge of

26  the matters related to Thought, Inc. with respect to the RedHat third party Subpoena of

27

28

1    August 6, 2007 (received by Thought on August 9, 2007) and of the matters stated herein,

2    and, if called as a witness, I could and would testify competently thereto.

3
4          2.       I was a founder of Thought, Inc. and served as its CTO during the period

5    prior to August 25, 1998 as referenced by the RedHat subpoena dated August 6, 2007. I

6    have personal knowledge regarding the legacy systems of Thought, Inc. and the historical

7    developments at Thought, including developments related to Thought software

8    development and business records, including digital archiving and computer systems.

9          3.       I hold a number of key ORM patents, including the Thought patent US.

10   Patent No. 5,857,197 that is referenced in the RedHat subpoena dated August 7, 2007,

11   which is a pioneering patent in the field of ORM technology.

12
13         4.       I was the sole inventor for the Thought issued patent US. Patent No.

14   5,857,197. Also, to the very best of my knowledge, understanding and recollection, no

15   Thought ORM product was ever published or offered for sale prior to the filing date for

16   this first Thought ORM patent filing date.

17         5.       From the foundation date of Thought, Inc., both my personal policy and

18   the strong corporate policy of Thought have always been to file a patent on any inventive

19
20   concepts prior to any offering for sale or prior to any publication of any software

21   implementations for a novel concept that might be patentable. To achieve this end of

22   strong patent protection Thought has spent hundreds of thousands of dollars since 1994.

23         6.       As the CTO of Thought during the period in question, I am personally

24   aware that from the filing date of the initial Thought ORM patent in March 1997 through

25   the end of the period that is referenced by the RedHat subpoena (September 25, 1998), all

26   ORM software and documentation that were published or sold by Thought were simply

27
28

1
2
3
4
5
implementations of concepts that were described within this initial Thought patent text,

claims or drawings as conceptual duplicates of the patent's concepts. Only after the

period covered by the subpoena were any novel concepts filed for in Thought patents and

then included within Thought software implementations for publication or sale.

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
            7.      As an ORM expert, it is my sincere opinion that any review of Thought

software implementations and corresponding documentation that published during the

period of time set forth in the subpoena would be merely to obtain duplicative and

cumulative prior art over the information that would be available to me from simply

reviewing the text of the issued patent. Such information and concepts would likewise be

readily obtainable and understandable to any ORM expert without the need to resort to

reviewing any further implementations examples or documentation. As such, I would

only consider optionally reviewing a patented software implementation that is focused

upon end users instead of upon underlying concepts, as a final step for a narrowly

focused optional review step that might not be required at all. It is important to recognize

that implementation software and documentation are directed to an end user rather than to

a competitor ORM expert who may wish to illegally reverse engineer the software. With

implementation software the end user only experiences the software interfaces and the

resulting output along with a description of how to get results in the user documentation

rather than an explanation of the "black box" inner workings and concepts behind the

software implementation that might provide such results.

24
25
26
27
            8.      Moreover, my expert opinion is that until such time as a feature described

within the Thought patent is specifically identified to Thought as being relevant prior art

that is at issue in the current litigation between FIRESTAR and RedHat, simply generally

28

reviewing Thought documentation or software implementations would be a waste of time

for any reputable ORM expert. In addition, I am personally aware that it would require a

monumental effort for Thought to locate such materials from legacy systems and to then

separate them from other Thought irrelevant yet proprietary information to provide such a

redundant general review.

9.    Such unnecessary work to hoard potentially irrelevant documents and

information to a later time for remotely possible use, when such documents and

information can be readily sought and obtained in a more focused subpoena if they are

required does not seem at all justified in view of the burden that I am clearly aware that it

would place on Thought's business interests. In addition such potentially unnecessary

efforts to obtain data and records that might not even be required can place at risk and

possibly destroy important and irreplaceable Thought documents and data, particularly if

RedHat is considering utilizing a third party to tinker with the Thought legacy systems in

an attempt to produce documents and information, when such a third party is unfamiliar

with both the Thought legacy systems and legacy software products. Since Thought did

not utilize an installer program that neatly packages software products for publication,

portions of legacy software packages may be widely scattered within legacy systems, if

they are available at all. In fact, it may be necessary for Thought to use its historical

knowledge of the legacy software and legacy systems along with its software expertise to

re-package individual legacy software releases and documentations in order to distinguish

between items that were published and items that were not ever published.

9.    For the reasons set forth above, software implementations and

documentations are often of little use to an ORM expert to determine inner workings

concepts, unless the software is reverse engineered as part of the analysis. Typically,

reverse engineering is not permitted by software licenses or copyrights, and the concepts

behind the software are only available from source code or patent descriptions

themselves.

10.    Accessing Thought legacy systems to obtain such data would be

complicated by a number of important factors. For example, during the December 8,

1999 PG&E six hour power outage the Thought main server hard drive system was

damaged. Because of business needs at the time, it was not necessary to fully restore or

reorganize legacy data upon the new hard drive system and much legacy data may be

located (if at all) on other archive types that may be widely scattered, further complicated

by the reality that we have moved physical offices since then and updated a number of

our obsolete computer systems. Shortly after the December 1999 PG&E incident, the

internet server for Thought proprietary software and documentation downloads was

hacked, infested with viruses and the system needed to be wiped clean.

11.    Finally, Thought believes it would be foolhardy and seriously represent an

unreasonable business risk with respect to important present and future Thought business

interests to place irreplaceable Thought important data resources, some of which are

Thought's ONLY source for such information unnecessarily in the hands of a third party.

In the hands of any third party there would be a risk of irreplaceable data being

accidentally destroyed or purposefully sabotaged by a competitor's agents. Because of

such risks Thought is in the best place to retrieve any information from legacy systems, if

required, at Thought's reasonable costs to avoid unnecessary risks to irreplaceable data.

Case  C 07-MC 80204 –MMC                                            Page 6 of 6

1        I declare under penalty of perjury under the laws of the State of California that

2    the foregoing is true and correct and that this declaration was executed this 28th day of

3    September 2007, in San Francisco, California.

4

5

6

7

8                                              Ward R. Mullins
                                               CEO of Thought, Inc.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOHN JASON GENTRY MULLINS (State Bar No. 236,485)
5 Third Street, Suite 815
San Francisco, CA 94103
Tel: (415) 350-4405
Fax: (415) 358-8581

Attorney for:
Thought, Inc. – Third Party Non-Litigant

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| FIRESTAR SOFTWARE, INC<br><br>Plaintiff,<br><br>v.<br><br><br>RED HAT, INC.<br><br>Defendant. | ) **DECLARATION OF GREG BAKER IN SUPPORT**<br>) **OF THOUGHT INC.'S MOTION TO QUASH THIRD**<br>) **PARTY SUBPOENA, OR IN THE ALTERNATIVE**<br>) **FOR A PROTECTIVE ORDER;**<br>) **[PROPOSED ORDER]**<br>)<br>)<br>)<br>) **[CASE NO. C 07-80204 MISC MMC (EMC)**<br>)<br>)<br>)<br>)<br>) |

## <u>NOTICE OF MOTION; MOTION</u>

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD

I, Greg Baker, declare as follows:

      1.      I am the Director of Sales and a Co-Founder of Thought, Inc. and I have

personal knowledge of the matters related to Thought, Inc. with respect to the RedHat

third party Subpoena of August 6, 2007 (received by Thought on August 9, 2007) and of

Case C 07-MC 80204 –MMC                                    Page 2 of 7

1  the matters stated herein, and, if called as a witness, I could and would testify

2  competently thereto.

3      2.      On July 13, 2007, I received a telephone call from Jon Pierce purporting

4  to be an attorney from Red Hat litigation and received on that same date an email from

5  him with at draft copy of a subpoena that broadly requested legacy and proprietary

6  documents from Thought, Inc. Thought, Inc. has important business interests in its

7  proprietary documents and I was busy conducting the regular business of Thought, Inc.

8  and Mr. Pierce: (i) made no offers to pay for any costs to check for the existence of such

9  documents, (ii) made no offers to restrict the scope of this preliminary draft document to

10  a more narrow scope or provide a protective order, and (iii) I was unable to verify

11  whether this was a bogus document or communication. Therefore, I took no action

12  beyond forwarding the email to our outside counsel and awaiting a formal subpoena

13  request that could be verified as coming from a legitimate court action.

14      3.      On August 9, 2007, Thought received a Subpoena from RedHat that

15  broadly requested legacy and proprietary documents from Thought with a tight legal

16  deadline of August 21, 2007 for responding. I immediately contacted our attorney and

17  set up a conference call with Jon Pierce and the attorney who was supposed to have

18  negotiating authority from RedHat to address Thought's concerns for August 10, 2007.

19      4.      On August 10, 2007, our counsel, John Jason Gentry Mullins, and I had a

20  telephone conference with the two RedHat attorneys.

21      5.      I attest to the accuracy of the following facts below from that telephone

22  conference and from follow-on communications thereafter, to the best of my memory

23  notes, understanding and recollection.

6.    I hereby attest unequivocally that at no time during the telephone conference did either of the RedHat Attorneys (Jon Pierce and Steve Moore) ever offer or agree to extend the LEGAL deadline for responding to the subpoena beyond the August 21, 2007 date.

7.    I attest that the RedHat attorneys would not agree orally and did not agree prior to August 21, 2007 in writing to send Thought a writing modifying the subpoena in any way with respect to (i) the scope of the subpoena, (ii) use restrictions upon any proprietary information that might be produced by Thought, (iii) providing a reasonable explanation and justification for requesting the proprietary and legacy information, (iv) addressing Thought concerns in writing regarding the lack of a protective order, and (v) extending the legal period for responding  in order to meet and confer to address Thoughts concerns and get a settlement agreement to narrow the scope.

8.    I attest that during the August 10, 2007, RedHat would only generally discuss the subpoena and would not agree or seriously consider any changes to the subpoena. It is possible that RedHat may have stated in passing that they could consider (without any firm agreement to that effect) being liberal about the production period if Thought would agreed not to contest the subpoena as it then stood and to simply produce all the items requested. However, as RedHat must be well aware, there was never any commitment or offer from them to Thought to extend the legal deadline in order to have further discussions beyond the August 21, 2007 date.

9.    I attest that during the August 10, 2007 conference and in several communications thereafter, I expressed my concerns to the RedHat Attorneys (Jon Pierce and Steve Moore) that the subpoena was burdensome, overbroad, requested

proprietary information without any protective order being in place or any limitations on

how the information would be used. I also expressed my concern that all of the

information or data would be located (if at all) on legacy systems and it would be

difficult, time consuming, disruptive to Thought's ongoing business concerns, and

expensive to obtain the information. I expressed our view that any information that

might be gleaned from our earlier software releases and documentation would merely be

duplicative or cumulative over the concepts presented in the Thought patent already in

the possession of RedHat. RedHat attorney's informed me that they were very early in

the discovery process and had not had time to analyze the Thought patent to determine if

what I was saying was in fact true or untrue.

10.    I attest that in the telephone conference of August 10, 2007, I directly

asked the RedHat attorneys to either narrow the scope of the subpoena in writing or to

withdraw it without prejudice until they could review the Thought patent and determine

if the expensive and disruptive process of accessing legacy systems would really be

necessary, so they could focus our efforts only on items that would actually be needed.

11.    I attest that at the end of the August 10, 2007 telephone conference, the

parties had only made a single verbal agreement for the entire conversation, which was

for me to send RedHat our written concerns as soon as possible to compile them to

writing, and they agreed that they would get back with Thought on those concerns.

12.    I attest that I offered RedHat (as a professional courtesy rather than any

acquiescing to the Supboena) in the August 10, 2007 conference and in my August 15,

2007 follow-up email, for Thought to consider looking for and providing certain

duplicative and cumulative proprietary documents for RedHat if they would (1) provide

a protective order and use limitation for the information, (2) pay our reasonable costs for obtaining the information, (3) give us an extension of time to try to locate the information on our legacy systems, and (4) because of the potential continued future disruption to Thought's ongoing business interests to agree to not ask for further documents by subpoena unless they had exhausted other resources and could provide us with acceptable reasons why they were necessary for RedHat's defense and not duplicative or cumulative over information already in the hands of RedHat.

13.     In my August 15, 2007 email on the last page, last paragraph, I had stated that unless Thought could get a response from RedHat and come to a mutual agreement to address Thought concerns, by August 17, 2007 Thought would be compelled to file a Motion to Quash because of the inherent deadlines and egregious conditions set forth in the Subpoena. Accordingly, my August 15, 2007 letter makes clear to RedHat that we understood the legal deadline of August 21, 2007 to be a firm date for filing our Motion to Quash to preserve our rights, and because RedHat had not agreed to extend the legal deadline beyond the firm deadline of August 21, 2007.

14.     I attest that I had my written concerns and our cost estimates sent to RedHat on August 15, 2007, but RedHat never responding telephonically, by email, fax, or regular mail prior to the August 21, 2007 date deadline for legal response to the subpoena.

15.     I attest that on August 20, 2007, I had a follow-up fax sent to RedHat along with a copy of the August 15, 2007. At the end of the next to last paragraph of the two page fax communication and in its last paragraph, I indicated that RedHat had failed to make any effort to agree to extend the deadline for responding to the subpoena, had

failed to respond to the August 15, 2007 letter, and that it would be necessary to file a Motion to Quash on August 21, 2007 since no compromise had been reached and the legal period for response would expire on August 21, 2007.

16.    ˙I attest that RedHat did not acknowledge or respond to my August 20, 2007 fax, or the letter send later that day by our attorney to address specific concerns for each item listed on the subpoena. No response was ever received from RedHat either telephonically, by email, fax, or regular mail to extend the legal deadline for response to the subpoena beyond August 21, 2007 in order to seek a compromise by a meet and confer. Such an action would have required little time or effort if RedHat was willing to extend the legal deadline.

17.    I attest that even though Thought counsel waited until the end of the day, and contacted Thought representative to check for a RedHat resonse on August 21, 2007 prior to filing the Motion to Quash, there was no response or acknowledgement from RedHat regarding any prior communications by Thought from RedHat as of that time..

18.    I attest, in short, that prior to August 21, 2007, when our attorney filed a Motion to Quash, RedHat had never responded by telephone, email, fax or any other communication to even acknowledge my August 15, 2007 letter, to respond on its merits or to agree to extend the legal deadline to give the parties time to meet and confer on the issues and concerns raised by Thought in the August 10, 2007 conference and as set forth in detail in my August 15, 2007 letter.

DECLARATION OF GREG BAKER IN SUPPORT OF THOUGHT'S
MOTION TO QUASH OR FOR A PROTECTIVE ORDER            CASE NO. C 07-080204 MISC MMC (EMC)

6

Case  C 07-MC 80204 –MMC                                    Page 7 of 7

I declare under penalty of perjury under the laws of the State of California that

the foregoing is true and correct and that this declaration was executed this 28th day of

September 2007, in San Francisco, California.


Greg Baker
Director of Sales, Thought, Inc.

## CERTIFICATE OF SERVICE

[CASE NO. C 07-80204 MISC MMC (EMC)]
UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

Third nonparty Thought, Inc. hereby certifies by and through its attorney John

Jason Gentry Mullins that a true and correct copy of foregoing THOUGHT INC.'S

STIPULATION REQUEST TO FACT AND INFO RE MOTION TO QUASH THIRD

PARTY SUBPOENA, AND REVISED PROTECTIVE ORDER: [PROPOSED ORDER]

was served by at least one of US mail, fax or email to:

| | |
|---|---|
| Allen F Gardner<br>Potter Minton,<br>A Professional Corporation<br>110 North College,<br>600 Plaza Tower<br>Tyler, TX 75702 | Steve Moore, Attorney and Partner, and Jon Pierce, Attorney<br>Kilpatrick Stockton LLP<br>1001 West Fourth Street, Winston-Salem,<br>NC 27101-2400<br>Phone: (336) 607-7503<br>Fax: (336) 734-2638 |
| HARVEY SISKIND LLP<br>D. Peter Harvey (SBN 55712)<br>4 Embarcadero Center, 39th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 354-6100<br>Fax (415) 391-7124 | |

DATED: September 28, 2007.

JOHN JASON GENTRY MULLINS (State Bar No. 236,485)
Attorney for Non-Party Thought, Inc.
5 Third Street, Suite 815
San Francisco, CA 94103
Tel: (415) 350-4405
Fax: (415) 358-8581